IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIANNA LAROSA,<br><br>                Plaintiff,<br><br>-against-<br><br>ISLAND EXTERIOR FABRICATORS LLC,<br><br>                Defendant. | Case No. 22 Civ. 4373 |

## COMPLAINT

Plaintiff Gianna LaRosa ("Ms. LaRosa"), by and through her attorneys, Kessler Matura P.C., complaining of Defendant Island Exterior Fabricators LLC ("IEF"), alleges as follows:

## INTRODUCTION

1. Pursuant to the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §§ 12101, *et seq.* ("ADAAA"), and the New York State Human Rights Law ("NYSHRL"), Executive Law § 290 *et seq.*, this lawsuit seeks compensatory and punitive damages, and other relief, based on IEF's decision to discriminatorily terminate Ms. LaRosa.

2. IEF is an all-inclusive facade subcontractor, that provides building envelope consulting, design, engineering, and fabrication throughout the greater Northeast region. IEF employs approximately five hundred individuals.

3. Ms. LaRosa is a mother of three, with over twenty years of experience working in Human Resources, overseeing hundreds of employees. IEF hired Ms. LaRosa to spearhead all facets of its human resources department.

4. Ms. LaRosa was terminated because of her relationship to her disabled son.

5. Ms. LaRosa was terminated because IEF regarded and perceived her as disabled after the loss of her son.

6. Ms. LaRosa filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 18, 2022, alleging violations of the ADAAA.

7. Ms. LaRosa's EEOC Charge was cross-filed with the New York State Division of Human Rights.

8. On July 7, 2022, the EEOC issued Ms. LaRosa a Notice of Right to Sue Letter.

## JURISDICTION & VENUE

9. Jurisdiction of the Court over this controversy is based upon 42 U.S.C. §§ 12101, *et seq*.

10. This Court has supplemental jurisdiction over Ms. LaRosa's state law claim pursuant to 28 U.S.C. § 1367(a).

11. Venue is proper within this Judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in the Eastern District of New York.

## THE PARTIES

*Plaintiff Gianna LaRosa*

12. Ms. LaRosa is a resident of Suffolk County, New York.

13. Ms. LaRosa worked for IEF in Calverton, New York from approximately February 2021 to September 2021, as Director – Human Resources.

14. At all times relevant, Ms. LaRosa was an "employee" within the meaning of 42 U.S.C. § 12111(4) and the N.Y. Exec. Law § 292(6).

2

*Defendant Island Exterior Fabricators LLC*

15. IEF was and still is a domestic corporation authorized to do business pursuant to the laws of the State of New York.

16. IEF's principal place of business is located at 1101 Scott Avenue, Calverton, New York, 11933.

17. At all times hereinafter mentioned, IEF was and still is an "employer" within the meaning of 42 U.S.C. § 12111(5) and the N.Y. Exec. Law § 292(5).

## FACTS

18. In January 2021, Ms. LaRosa was recruited and selected as a candidate to interview with IEF for the Director – Human Resources position.

19. On January 12, Ms. LaRosa interviewed with Chief Risk Officer, Elizabeth Fitzpatrick ("Ms. Fitzpatrick") and IEF's managing partner, Ed Harms ("Mr. Harms").

20. Ms. LaRosa participated in the interview while at Memorial Sloan Kettering Cancer Center with her twenty-one-year-old son.

21. During the interview, Ms. LaRosa advised Ms. Fitzpatrick and Mr. Harms that she was in the hospital with her son.

22. On January 15, IEF offered Ms. LaRosa the Director – Human Resources position. February 3 was Ms. LaRosa's first day of work.

23. In April, Ms. LaRosa advised IEF that her son suffered from a rare form of pediatric cancer which would require a multi-organ transplant.

24. On August 6, Ms. LaRosa advised IEF that her son had a transplant donor match and would be having surgery.

25. Tragically, on August 7, Ms. LaRosa's son died.

26. Ms. LaRosa advised IEF of her son's death on August 8.

27. On August 20, while out on bereavement leave, Ms. LaRosa contacted IEF and explained that she would be available to assist if anyone in the office needed help.

28. Ms. LaRosa also advised IEF that she planned to return to work the second week of September.

29. On or about September 7, Ms. Fitzpatrick requested Ms. LaRosa come into the office for a for a meeting with Mr. Harms to "address employee needs/issues as well as the Department." A meeting was scheduled for September 10.

30. On September 10, Ms. LaRosa met with Ms. Fitzpatrick, Mr. Harms, and Chief Financial Officer, Jeffrey Robinson.

31. During this meeting, Mr. Harms repeatedly questioned Ms. LaRosa's ability to work effectively after suffering the loss of her son.

32. Mr. Harms stated, "how could you return to work . . . are you sure . . . can you really do this job?"

33. When Ms. LaRosa responded by stating she was committed to returning to work and was prepared to do so effectively.

34. Mr. Harms began shaking his head from side-to-side and repeatedly questioned her ability to work, stating, "If I lost my child, I wouldn't be able to go back to work. How can you go back to work after everything you've been through? I don't know how you can."

35. Mr. Harms then advised Ms. LaRosa of some previously undisclosed complaints from anonymous IEF employees.

36. In response, Ms. LaRosa asked Mr. Harms of specific examples of complaints. Mr. Harms was unable to provide concrete examples.

37. Shamefully, Mr. Harms added that Ms. LaRosa should just admit that she was unable to do her job over the prior months because she was so "preoccupied and upset" about her son's illness.

38. Ms. Fitzpatrick then advised Ms. LaRosa that she was "just not a fit" at IEF.

39. As a consequence of Ms. LaRosa's refusal to admit that her job performance suffered because of her son's illness, Mr. Harms became notably agitated.

40. Mr. Harms repeatedly stated to Ms. LaRosa that she should "just admit [that she had performance issues]," and asked, "how do you think you can recover from that?"

41. The meeting concluded with IEF terminating Ms. LaRosa.

## FIRST CAUSE OF ACTION
### Disability Discrimination – Wrongful Termination
### An ADAAA Violation

42. Ms. LaRosa realleges and incorporates by reference all allegations in all preceding paragraphs.

43. By the acts and practices described above, specifically, IEF's managing partner, Mr. Harms, implying Ms. LaRosa had an emotional or mental illness by repeatedly asking her how she could return to work after the loss of her son, IEF intentionally discriminated against Ms. LaRosa in violation of the ADAAA.

44. Ms. LaRosa was not disabled pursuant to subsection (1)(A) of 42 U.S.C. § 12102 while employed by IEF.

45. Ms. LaRosa did not have a of record of disability pursuant to subsection (1)(B) of 42 U.S.C. § 12102 while employed by IEF.

46. IEF was aware of Ms. LaRosa's son's disability.

47. IEF was aware of Ms. LaRosa's son's death.

48. IEF regarded Ms. LaRosa as disabled.

49. IEF perceived Ms. LaRosa as disabled.

50. IEF took an adverse employment action against Ms. LaRosa by terminating her after regarding her as disabled.

51. IEF took an adverse employment action against Ms. LaRosa by terminating her after perceiving her as disabled.

52. IEF cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein.

53. IEF cannot demonstrate that its perception of Ms. LaRosa's alleged disability was not the but-for cause of her termination.

54. Any alleged non-discriminatory reason for Ms. LaRosa's termination is nothing more than pretext so that IEF may avoid liability.

55. As a consequence of the discrimination engaged in by IEF, Ms. LaRosa has suffered severe damages, including, but not limited to, deprivation of income and benefits, and emotional distress.

**SECOND CAUSE OF ACTION**
**Associational Disability Discrimination – Wrongful Termination**
**An ADAAA Violation**

56. Ms. LaRosa realleges and incorporates by reference all allegations in all preceding paragraphs.

57. By the acts and practices described above, specifically, IEF's managing partner, Mr. Harms, pressuring Ms. LaRosa to admit that she was unable to do her job over the prior months because she was so "preoccupied and upset" about her son's illness and that she may be

6

"distracted" because of the death of her son, IEF intentionally discriminated against Ms. LaRosa in violation of the ADAAA.

58. Ms. LaRosa was qualified to fulfill the job duties of Director-Human Resources for IEF.

59. IEF was aware of Ms. LaRosa's son's disability.

60. IEF was aware of Ms. LaRosa's son's death.

61. IEF took an adverse employment action against Ms. LaRosa by terminating her because of her relationship to a disabled person.

62. IEF cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein.

63. IEF cannot demonstrate that Ms. LaRosa's relationship to a disabled person was not the but-for cause for her termination.

64. Any alleged non-discriminatory reason for Ms. LaRosa's termination is nothing more than pretext so that IEF may avoid liability.

65. As a consequence of the discrimination engaged in by IEF, Ms. LaRosa has suffered severe damages, including, but not limited to, deprivation of income and benefits, and emotional distress.

## THIRD CAUSE OF ACTION
### Disability Discrimination – Wrongful Termination
### A NYSHRL Violation

66. Ms. LaRosa realleges and incorporates by reference all allegations in all preceding paragraphs.

67. Ms. LaRosa was not disabled.

68. IEF regarded Ms. LaRosa as disabled.

7

69. IEF perceived Ms. LaRosa as disabled.

70. IEF intentionally discriminated against Ms. LaRosa.

71. IEF took an adverse employment action against Ms. LaRosa by terminating her after regarding her as disabled.

72. IEF took an adverse employment action against Ms. LaRosa by terminating her after perceiving her as disabled.

73. IEF knew its actions constituted unlawful discrimination and/or showed reckless disregard for Ms. LaRosa's statutorily protected rights.

74. Any alleged non-discriminatory reason for Ms. LaRosa's termination is nothing more than pretext so that IEF may avoid liability.

75. As a consequence of the discrimination engaged in by IEF, Ms. LaRosa has suffered severe damages, including, but not limited to, deprivation of income and benefits and emotional distress.

## DEMAND FOR JURY TRIAL

76. Ms. LaRosa demands a trial by jury for all issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gianna LaRosa demands that a judgment be entered in her favor and that the Court order and award Ms. LaRosa the following relief against IEF:

A. A declaratory judgment that the actions, conduct, and practices of IEF complained of herein violate the laws of the United States, and the State of New York;

B. An award of damages against IEF, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

C. An award of damages against IEF, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D. An award of punitive damages in an amount to be determined at trial;

E. Pre-judgment interest on all amounts due;

F. An award of Ms. LaRosa's reasonable attorneys' fees and costs; and

G. Such other and further relief as the Court may deem just and proper.

Dated: Melville, New York
      July 25, 2022                      Respectfully submitted,

By: /s/ Troy L. Kessler
     Troy L. Kessler

**KESSLER MATURA P.C.**
Troy L. Kessler
Jocelyn Small
534 Broadhollow Road, Suite 275
Melville, New York 11747
(631) 499-9100
tkessler@kesslermatura.com
jsmall@kesslermatura.com

***Attorneys for Plaintiff***